UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

CHRISTOPHER LAYNE                                              PLAINTIFF

V.                          NO. 3:16CV00262-JTR

NANCY A. BERRYHILL,
Acting Commissioner,
Social Security Administration                                 DEFENDANT

# ORDER

## I. Introduction:

Plaintiff, Christopher Layne, applied for disability income benefits and supplemental security income benefits on June 19, 2014, alleging his disability began on May 1, 2012. (Tr. at 11). His claims were denied initially and upon reconsideration. *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Layne's application on November 4, 2015. (Tr. at 23). The Appeals Council denied his request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Layne has requested judicial review.

For the reasons stated below, the Court [1] affirms the decision of the Commissioner.

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

## II. The Commissioner's Decision:

The ALJ found that Layne had not engaged in substantial gainful activity since the alleged onset date of May 1, 2012 (Tr. at 13). At Step Two of the five-step analysis, the ALJ found that Layne has the following severe impairments: degenerative disc disease of the lumbar spine and status post discectomy; obstructive sleep apnea; hypertension; obesity; generalized anxiety disorder; depression; and Haglund's deformity. (Tr. at 14).

After finding that Layne's impairments did not meet or equal a listed impairment (Tr. at 14), the ALJ determined that Layne had the residual functional capacity ("RFC") to perform the full range of sedentary work, except that: (1) he cannot climb ladders, ropes, or scaffolds; (2) the work must not require balancing duties; (3) he can only occasionally climb ramps and stairs; (4) he can only occasionally stoop, kneel, crouch, and crawl; (5) he must be able to access a work station area with a cane as needed; (6) he cannot be exposed to hazards in the work place; (7) he must avoid exposure to unprotected heights; (8) the work must not require any left lower extremity foot control operation; (9) the work must not require contact with the general public; (10) interpersonal contact must be no more than incidental to the work performed; (11) the supervision required is simple, direct, and concrete; and (12) the work must be limited to SVP 1 or 2 jobs that can be learned

in thirty days.[2] (Tr. at 16-17).

Next, the ALJ found that Layne was not capable of performing any past relevant work. (Tr. at 21). At Step Five, the ALJ relied on the testimony of a Vocational Expert ("VE") to find that, based on Layne's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that he could perform at the sedentary level with the added limitations, specifically, lampshade production assembler and general office clerk (document preparer). (Tr. at 22-23). Based on that Step Five determination, the ALJ held that Layne was not disabled. *Id.*

### III. Discussion:

#### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the

---

[2] The SVP (specific vocational profile) level listed for each occupation in the DOT connotes the time needed to learn the techniques, acquire the information, and develop the facility needed for average work performance. At SVP level one, an occupation requires only a short demonstration, while level two covers occupations that require more than a short demonstration but not more than one month of vocational preparation. *Hulsey v. Astrue*, 622 F.3d 917, 923 (8th Cir. 2010); *Dictionary of Occupational Titles* app. C, at 1009 (4th ed. 1991).

record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d. at 477.

B. Layne's Arguments on Appeal

Layne argues that substantial evidence does not support the ALJ's decision to deny benefits. He contends that the ALJ failed to fully consider the impact of Layne's obesity on his ability to work and that he did not identify medical evidence to support the RFC determination.

The ALJ listed obesity as a severe impairment. (Tr. at 14). He stated that he considered the severity of Layne's obesity in combination with his other impairments, in accordance with the Commissioner's regulations. (Tr. at 15). When an ALJ references the claimant's obesity during the claim evaluation process,

4

such review may be sufficient to avoid reversal. *Brown v. Barnhart*, 388 F.3d 1150, 1153 (8th Cir. 2004)(claimant's argument that ALJ failed to consider obesity dismissed because ALJ specifically referenced obesity in his decision). The test for obesity is whether it has an impact on functional capacity when measured against the record as a whole, and that is a case-by-case analysis. *See* Soc. Sec. Ruling 02-1p. Here, the ALJ considered medical evidence and testimony from Layne himself and determined that his obesity did not increase the severity of other impairments. (Tr. at 18-19).

Layne underwent a discectomy and decompression surgery on his lumbar spine in February 2013. (Tr. at 334). By March 2013, Layne was overall much better, and had started walking every day, going to the gym, and doing physical therapy. *Id.* Upon examination at that time, straight-leg raise was negative, he had good posture and gait, and there was no point tenderness in the lumbar spine. (Tr. at 335). Layne's medical provider decreased his Hydrocodone dose and released him to go back to work. *Id*. By April 2013, Layne said his back pain was improving and he was still exercising. (Tr. at 351). At that time, he said he was taking fewer pain medications and muscle relaxers. *Id*.

After an April 2014 motor vehicle accident in which Layne broke three ribs, he complained of neck and back pain; however, on April 30, 2014, he said that his

pain was slowly improving, and a CT scan of the cervical and lumbar spine revealed no acute changes. (Tr. at 345). Objective tests showing mild to moderate conditions do not support a finding of disability. *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004). Dr. Nathan Turney, M.D., released Layne to return to work on May 5, 2014. (Tr. at 346).

Testing in June 2015 revealed mild obstructive sleep apnea. (Tr. at 467). It was noted that Layne's back pain might get better with treatment of the sleep apnea, but also that Layne's poor sleep hygiene compounded the condition. (Tr. at 466). Layne did not use a CPAP machine, although it was recommended. (Tr. at 44, 469). He was urged to exercise, improve his diet, and lose weight. (Tr. at 466).

Layne was not entirely credible with respect to his complaints of functional limitations. When Layne filled out a disability function report on August 8, 2014, he indicated he could do virtually no activities of daily living. (Tr. at 245-251). However, he testified at his hearing that he could cook, shop, handle personal care, help with household chores, and go to church once a week. (Tr. at 19-20, 40-42, 244-248). Such daily activities undermine his claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003); *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995). These daily activities suggest that obesity does not limit Layne as much as he contends in his first argument.

Furthermore, although Layne indicated he could not interact with the public, but had a Facebook account and drew strength from his church family. (Tr. at 42-43). Inconsistencies between subjective complaints of pain and daily living patterns diminish credibility. *Shannon*, 54 F.3d at 487.

Finally, the ALJ's RFC determination was supported by medical evidence. The ALJ must consider all of the evidence in the record when determining the RFC, including medical records, observations of treating physicians and others, and the claimant's own description of his or her limitations. *Stormo v. Barnhart*, 377 F.3d 801, 807 (8th Cir. 2004). If, in the light of all the evidence, "the impairments are not severe enough to limit significantly the claimant's ability to perform most jobs, by definition the impairment does not prevent the claimant from engaging in any substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).

The ALJ considered mild objective findings, doctors' opinions that Layne could return to work, positive response to treatment, and the ability to engage in various activities of daily living to conclude that Layne could work. His review of the record as a whole was sufficient and resulted in an accurate RFC.

IV. <u>**Conclusion**</u>:

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ properly considered Layne's obesity and the RFC determination

7

was informed by a complete review of medical evidence.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is AFFIRMED, and Layne's Complaint is DISMISSED, with prejudice.

DATED this 13th day of November, 2017.

_____
UNITED STATES MAGISTRATE JUDGE